IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| **Bernard J. Carl,**                              ) | |
| )                              | |
| )                              | |
| **Plaintiff**,                              ) | |
| )                              | |
| **v.**                              )                              | Civil Action No. 07-cv-1128 |
| )                              | |
| **BernardJCarl.com**, *et al.*,                              ) | |
| )                              | |
| **Defendants**.                              ) | |
| ————————————————)                              | |

## AMENDED REPORT AND RECOMMENDATION

This matter was remanded by order on December 16, 2008 (docket no. 17).

Upon consideration of the additional authorities cited in plaintiff's objections, the

magistrate judge agrees that the opinion in *Heathmount A.E. Corp. v. Technodome.Com*, 106 F.

Supp. 2d 860 (E.D. Va. 2000) should not be the basis for resolution of this action.

Plaintiff also presented to the district judge documents (exhibit B and D  to the

objections) not submitted to the magistrate judge, showing that the Network Solutions servers in

issue are located in Virginia.  While these documents appear to be inconsistent with the

information found by the magistrate judge in exhibit A to the amended complaint, the magistrate

judge accepts them as a sufficient basis to find, as the magistrate judge now does, that the servers

are located in Virginia.

On this finding, together with the well-pled allegations of the first amended complaint,

the holding in *Bochan v. LaFontaine*, 68 F.Supp. 2d 692 (E.D. Va. 1999) establishes that long-

1

arm jurisdiction exists in this court under Va. Code § 8.01-328.1(A)(3) ("causing tortious injury by act or omission in this Commonwealth") if the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment.[1]

The Due Process Clause requires that no defendant shall be haled into court unless the defendant has "certain minimum contacts [with the state]. . .  such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bochan*, 68 F. Supp. 2d at 702 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Here, defendant Fabrice Marchisio and his law firm Cotty Vivant Marchisio & Lauzeral ("CMVL") (collectively "defendants") utilized Network Solutions, LLC ("Network Solutions") and its Virginia servers to facilitate the publishing of defamatory remarks about plaintiff on the website www.BernardJCarl.com.  Defendants could have chosen to register the domain name with another registrar that did not use servers located in Virginia.  However, defendants chose to utilize Network Solutions and its Virginia servers to host their website for posting derogatory content about plaintiff over the Internet.

Moreover, defendants entered into a contract with Network Solutions to provide web-hosting services in which defendants agreed to submit to the jurisdiction of this court for any disputes "between you and Network Solutions under, arising out of, or related in any way to this Agreement (whether or not such disputes also involve other parties in addition to you and Network Solutions)."  (Exhibit C1 to the objections, p. 6, ¶ 21.)  In addition, paragraph seven of

---

[1] The magistrate judge views *Aitken v. Communication Workers of America*, 496 F. Supp. 2d 653 (E.D. Va. 2007), referred to in the remand order, as sufficiently distinguished on its facts to choose not to rely on it for reasons that need not be discussed given the clear applicability of *Bochan*.

Schedule A to the Service Agreement states that for the adjudication of any domain name disputes brought by a third party, the registrant submits to the personal jurisdiction of this court. (Exhibit C1 to the objections, p. 8, ¶ 7.)  Under these circumstances, the defendants could and should reasonably foresee being haled into this court.

Accordingly, the magistrate judge finds that this court's exercise of personal jurisdiction over the defendants does not offend the Due Process Clause of the Fifth Amendment.  The magistrate judge therefore proceeds to examine whether any of Counts I, II, and V of the first amended complaint establish plaintiff's entitlement to judgment.

### The Amended Complaint's Allegations

Plaintiff contends that the following allegations support his claims under Counts I, II, and V of the amended complaint:

In February 2007, defendants registered the domain name www.BernardJCarl.com with Network Solutions.[2]  Pl.'s Am. Compl. ¶ 12.  At the time of registration, defendants knew that they were registering a domain name identical to plaintiff's name and intended to confuse Internet users into accessing their website instead of continuing to search for information on plaintiff.  Pl.'s Am. Compl. ¶ 12.  The website contained statements that can be construed to deliver a false and misleading message that plaintiff does not pay his debts.  Pl.'s Am. Compl. ¶ 13.  Defendants created the website with the intention that its content would compel plaintiff to contact them and pay them for the alleged debt in exchange for removal of the website.  Pl.'s

---

[2] The well-pled allegations of the amended complaint establish that Marchisio was acting within the scope of his authority as a partner in CVML when he registered the website.  As a result, CVML is also liable for Marchisio's acts under the doctrine of respondeat superior.  Pl.'s Am. Compl. ¶ 10.

Am. Compl. ¶ 15.  Moreover, plaintiff says that the use of the domain name has caused, at a

minimum, "initial interest confusion," mistake and/or deception, and is likely to mislead

potential investors and business partners to believe, at least initially, that it is affiliated with, or is

sponsored, authorized, approved, or sanctioned by plaintiff.  Pl.'s Am. Compl. ¶ 21.

On these allegations, plaintiff claims in Count I that the use of the domain name

constitutes false designation of origin and false representation or description in violation of

section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Pl.'s Am. Compl. ¶ 22.  As a result,

plaintiff contends that he has suffered irreparable damage to his business and reputation.  Pl.'s

Am. Compl. ¶¶ 20, 23.

In Count II of the amended complaint, plaintiff claims that defendants' alleged activities

also create a likelihood of confusion as to the source or sponsorship of the domain name and

purposefully divert persons interested in plaintiff to their website.  Pl.'s Am. Compl. ¶ 28.

Plaintiff claims that by using the website, defendants have traded upon the reputation and

goodwill of plaintiff, thereby injuring that reputation and goodwill, and unjustly benefitting

therefrom, constituting trademark infringement, unfair competition, and misappropriation as

proscribed by the common law.   Pl.'s Am. Compl. ¶¶ 28, 29.

In Count V, plaintiff contends that defendants defamed plaintiff by publishing or causing

to be published statements on the website that can be construed to imply that plaintiff was not

honest in his business dealings.  Pl.'s Am. Compl. ¶ 40.   Specifically, the website contains an

allegation that plaintiff failed to pay an alleged debt in connection with the acquisition of a

company named D. Porthaul.  Pl.'s Am. Compl. ¶ 41.  The amended complaint alleges that this

statement is not true and that defendants made the statement willfully and maliciously, for the

4

purpose of damaging plaintiff's business and reputation in violation of Virginia law.  Pl.'s Am.

Compl. ¶ 42.

## Analysis of the Claims

### A.   Count I- Unfair Competition, False Representation and Designation of Origin

Plaintiff's claims for false representation and designation of origin invoke section 43 (a)

of the Lanham Act, 15 U.S.C. § 1125 (a).  *Lamparello v. Falwell*, 420 F.3d 309, 312 n. 1 (4th

Cir. 2005*); See Black & Decker (U.S.), Inc. v. Pro-Tech Power,* 26 F. Supp. 2d 834, 849 (E.D.

Va. 1998)

Section 43 (a) of the Lanham Act creates a cause of action against:

> any person who, on or in connection with any goods or services . . . uses
> in commerce any word, term, name, symbol, or device . . ., or any false
> designation of origin, false or misleading description of fact, or false or
> misleading representation of fact, which (A) is likely to cause confusion,
> or to deceive as to the affiliation, connection, or association of such person
> with another person, or as to the origin, sponsorship, or approval of his
> or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125 (a)(1)(A).

In order to establish and prevail on a claim for false representation and designation of

origin and unfair competition, plaintiff must satisfy the following five elements:

> (1) that [he] possesses a mark; (2) that the [opposing party] used the mark;
> (3) that the [opposing party's] use of the mark occurred "in commerce";
> (4) that the [opposing party] used the mark "in connection with the sale,
> offering for sale, distribution, or advertising" of goods or services; and,
> (5) that the [opposing party] used the mark in a manner likely to confuse
> consumers.

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125, and *Lone Star Steakhouse and Saloon v. Alpha of Virginia*, 43 F.3d 922, 930 (4th Cir. 1995)).

While elements two, three, and four are pled,[3] plaintiff has not pled, nor do his allegations show, that he actually possessed or had a valid protectable interest in the mark.  Plaintiff has not filed an application with the United States Patent and Trademark Office ("USPTO") registering the mark Bernard J. Carl.  However, registering the mark with the USPTO is not the only way to establish that a plaintiff's mark is entitled to protection because section 43(a) of the Lanham Act "generally has been construed to protect against trademark, service mark, and trade name infringement even though the mark or name has not been federally registered." *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F. Supp. 2d 488, 494 (E.D. Va. 1999) aff'd, 217 F.3d 843 (4th Cir. 2000) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).  When the mark is not federally registered, a mark- holder seeking Section 1125(a) relief must establish: (1) that the mark-holder has used the mark in American commerce; and (2) that the mark is distinctive.  *International Bancorp,* 192 F. Supp. 2d at 479 (citing *Washington Speakers Bureau, Inc.*, *supra*).

---

[3]Plaintiff has established that defendants used the mark by creating and maintaining the www.BernardJCarl.com website.  Defendants' use of the mark had the "customary jurisdictional effect" on interstate commerce. *International Bancorp, LLC, et al., v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco*, 192 F. Supp. 2d 467, 479 (E.D. Va. 2002).  For example, a Virginia citizen who had an interest in procuring plaintiff's services may have had second thoughts after reading the website's content. *See* Pl.'s Am. Compl. ¶¶ 12, 13, 20, 28, 41, 42. Finally, defendants used the mark "in connection with" services because the website discouraged individuals from procuring Bernard J. Carl's services. *Cf. People for the Ethical Treatment of Animals,* 263 F.3d at 365-66 (stating that a website that prevents an individual from accessing another's website satisfies the "in connection with goods and services element.")

To determine whether plaintiff's mark is distinctive, the court must determine whether the mark is fanciful, arbitrary, suggestive, descriptive, or generic. *Sara Lee Corp. v Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). The classification of the mark determines the protection to which it is entitled. Fanciful, arbitrary, and suggestive marks are inherently distinctive and are entitled to the greatest protection. On the other hand, generic marks are not inherently distinctive and are afforded no protection. Descriptive marks are also not inherently distinctive, but can be distinctive and entitled to protection if the mark holder establishes that the mark has acquired a secondary meaning in the community. *Id.*

Names, both first names and surnames, like the name Bernard J. Carl here, are descriptive marks and are only distinctive and entitled to protection if the claimant shows that his name has acquired a secondary meaning in the community. *Perini Corp.*, 915 F.2d at 125. For the claimant to establish that his name has a secondary meaning, he must show that a substantial portion of the consuming public would associate his name with a particular service or product. *Id.* In this regard, the following factors can be considered as evidence of a secondary meaning: "(1)[plaintiff's] advertising expenditures; (2) consumer studies linking the mark to the source; (3) [plaintiff's] sales success; (4) unsolicited media coverage of the product [or service]; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Id.* (citing *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).

Here, plaintiff's amended complaint is devoid of any allegations tending to establish that the Bernard J. Carl mark has acquired a secondary meaning. Accordingly, the magistrate judge finds that plaintiff has failed to allege that the mark is distinctive. Because the mark is not distinctive, plaintiff has failed to establish that he possessed or had rights in the mark. Thus,

plaintiff's failure to establish that he possessed the mark is fatal to his claims for federal unfair competition, false representation and designation of origin.

Even assuming satisfaction of the possession element of the claim, the magistrate judge finds that there could be no likelihood of confusion between whatever services plaintiff offers and the material that he alleges defendants published.  In making the likelihood of confusion assessment, this court considers the eight factors set forth by the Fourth Circuit which include: "(1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's intent in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers." *Perini Corp.*, 915 F.2d at 127.

Here, plaintiff has broadly alleged that the "use of the Domain Name has caused, at a minimum, initial interest confusion . . . and is likely to mislead investors and business partners to believe, at least initially, that it is affiliated with or are [sic] sponsored, authorized, approved[,] or sanctioned by plaintiff."Pl.'s Am. Compl. ¶ 21.[4]  While the amended complaint alleges generally that the defendants' use of the mark BernardJCarl creates a likelihood of confusion, the magistrate judge's measure of plaintiff's allegations against the eight factors noted in *Perini* and the mark's "use in its entirety," results in a finding to the contrary.  *People for the Ethical Treatment of Animals*, 263 F.3d at 366.  In support of this finding, the magistrate judge notes that

---

[4] The Fourth Circuit has never recognized the initial interest confusion approach. *Lamparello*, 420 F.3d at 316.  However, the language "at a minimum" preceding "initial interest confusion" in the amended complaint implies that the use of the website causes more than initial interest confusion, requiring this court to "examin[e] the allegedly infringing use in the context in which it is seen by the ordinary consumer." *Lamparello*, 420 F.3d at 316 (quoting *Anheuser-Busch, Inc. v. L&L Wings, Inc.,* 962 F.2d 316, 319 (4th Cir. 1992) (internal quotations omitted).

plaintiff has not alleged that there was "actual confusion" among members of the public between the defamatory content on the website and the services plaintiff offers.

Further, assuming the truth of plaintiff's allegations, defendants' "intent in adopting the mark" was clearly not to pass off its services as plaintiff's services. *See Scheduled Airlines Traffic Office, Inc. v. Objective: Inc.*, 180 F.3d 583, 590-91 (4th Cir. 1999) (misrepresentation includes passing off another's services or products as one's own).  Indeed, plaintiff and defendants are not competitors.  On the one hand, plaintiff uses the mark Bernard J. Carl, if at all, as an investor and businessman.  On the other, defendants used the mark BernardJCarl to embarrass plaintiff into paying his alleged debt.  *See* docket no. 3-3 ("We are very sorry to contact you in such a direct and unconventional way but we would be very grateful if you could have the elegance to pay the counsels who allowed you to safely acquire the company D. Porthault . . .")  In comparing the two, it is clear that plaintiff and defendants have not asserted similar goods into the marketplace where individuals, sophisticated and unsophisticated alike, would not be able to tell the difference.  Moreover, no one would be misled by the domain name www.BernardJCarl.com into believing that plaintiff authorized the content of that website.  No one would believe that plaintiff sponsored a site that implied that he was not honest or honorable in his own business dealings.  *Lamparello,* 420 F.3d at 315; *see New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308-09 (9th Cir. 1992 (stating that the use of a mark to solicit criticism of the mark-holder implies the mark-holder is not the sponsor of the use).

Upon consideration of the eight factors noted in *Perini* and the mark's use in its entirety, the magistrate judge finds that the facts alleged do not support a claim that includes likelihood of

confusion.  Accordingly, plaintiff's claims for unfair competition and false representation and designation of origin fail.

**B.     Count II- Trademark, Trade-Name Infringement, Unfair Competition, and Misappropriation (Common Law).**

Claims for trademark infringement and unfair competition under the common law involve the same elements as trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1114(1).  *Lamparello,*  420 F.3d at 312 n.1 (quoting *Lone Star Steakhouse and Saloon v. Alpha of Virginia*, 43 F.3d 922, 930 n.10 (4th Cir. 1995).  To prevail, the plaintiff must demonstrate that he owns a valid protectable trademark and that the defendant's use of an imitation is likely to cause confusion.  *Lone Star Steakhouse and Saloon*, 43 F.3d at 930.  As noted in Section A above, the magistrate judge finds that the mark's use in its entirety creates no likelihood of confusion.  Accordingly, plaintiff's common law claims for trademark, trade-name infringement, and unfair competition must also fail, regardless of whether plaintiff has a common law right in the mark.[5]

Moreover, Virginia does not recognize a cause of action for common law misappropriation.  *Superperformance Int'l, Inc. v. Hartford Casualty Ins. Co.*, 203 F. Supp. 2d 587, 597 (E.D. Va. 2002).  Accordingly, the magistrate judge recommends that plaintiff's claim for misappropriation be dismissed.

**C.     Count V- Libel**

---

[5]  Under Virginia law, plaintiff's interest in the mark would not necessarily be unprotected.  In Virginia, "common law rights to a mark are created by the first use of the mark. The first person to actually use a mark has a common law right to prevent others from using the mark or a confusingly similar mark, regardless of whether the subsequent user of the mark registers the mark."  *Old Town Funeral Choices v. Northern Virginia Funeral Choices,* 55 Va. Cir. 459, 464 (Fairfax County 2000); 2000 Va. Cir. LEXIS 399.

In order to establish a claim for libel under Virginia law, plaintiff must plead: (1)

publication; (2) an actionable statement; and (3) the requisite intent.  To be actionable a

statement must be both false and defamatory.  *Jordan v. Kollman*, 269 Va. 569; 612 S.E. 2d 203,

206 (2005).    True statements do not support a cause of action for defamation.  *American*

*Communications Network, Inc. v. Williams*, 264 Va. 336, 337, 568 S.E. 2d 683, 684 (2002).  Nor

do statements of opinion.  *Jordan*, 612 S.E. 2d at 206.  Moreover,

> [t]o be actionable without proof of "special damages", we have held that
> the words must contain an imputation that is "necessarily hurtful" in its
> effect upon plaintiff's business and must affect him in his particular trade
> or occupation.  *James v. Haymes*, 160 Va. 253, 261-62, 168 S.E. 333, 336
> (1933).  *Accord*, W. Prosser, Torts § 112, at 758 (4th ed. 1971) ("defamation
> of a kind incompatible with the proper conduct of the business, trade,
> profession or office itself").  There must be a nexus between the content of
> the defamatory statement and the skills or character required to carry out
> the particular occupation of the plaintiff.  Restatement (Second) of Torts
> § 573, Comment e (1976).  For example, because an attorney is required to
> adhere to the disciplinary rules, charging an attorney with unethical conduct
> is defamatory *per se*. *Carwile, supra*, 196 Va. at 8, 82 S.E.2d at 592.  The
> words themselves must necessarily be damaging to the attorney in his profession.
>
> Not every defamatory statement, however, is "necessarily hurtful" to a
> plaintiff's business and touches the plaintiff in his special trade or occupation.
> The allegation that a person has refused to pay a money debt is not *per se*
> defamatory if that person is not engaged in a vocation in which credit is
> necessary for the proper and effectual conduct of his business.  *M. Rosenberg*
> *& Sons v. Craft*, 182 Va. 512, 519, 29 S.E.2d 375, 378 (1944).  *Accord*, *Weaver v.*
> *Finance Company*, 200 Va. 572, 106 S.E.2d 620 (1959).  Likewise, written
> notice that credit is being denied to a bookkeeper-secretary does not touch the
> plaintiff in her special trade or vocation.  *See Shupe, supra*.  That a defamatory
> statement may have had an adverse impact upon a plaintiff's work does not
> make that statement *per se* defamatory where the defamation is not "necessarily
> hurtful" to the plaintiff's business and does not touch the plaintiff in his special
> trade or occupation.

*Fleming v. Moore*, 221 Va. 884; 275 S.E. 2d 632, 636 (1981).

11

In determining the intent required to plead a claim for libel, the court must determine whether the plaintiff is a public or private figure and must look to the damages sought. *Id*. at 206.  In cases where the plaintiff and defendant are private, non-media parties, and the plaintiff is only asking for an award of actual damages, and the defamatory statement makes substantial danger to plaintiff's reputation apparent, the plaintiff need only plead that the defendant acted negligently in failing to ascertain the facts on which the defamatory publication was based. *Gazette, Inc. v.. Harris*, 229 Va. 1; 325 S.E. 2d 713, 725-727 (1985).  However, any plaintiff seeking punitive damages for defamation under Virginia law must plead "actual malice," under the standard of  *New York Times v. Sullivan*, 376 U.S. 254 (1964)*,* that is, that the defendant made the statement knowing that it was false or with reckless disregard of whether it was false or not. *Fleming,* 275 S.E. 2d at 638.

The amended complaint alleges that plaintiff "is an investor and businessman." Pl.'s Am. Compl. ¶ 11.  This allegation appears to the magistrate judge to meet the requirement that he is "engaged in a vocation in which credit is necessary for the proper and effectual conduct of his business." *Fleming,* 275 S.E. 2d at 636.  The amended complaint's allegation that defendants published a false statement implying that he does not pay his just debts would therefore be libelous *per se* under Virginia law.

The amended complaint alleges generally, but adequately, that plaintiff "has been injured in his good name, and damaged in his business reputation."  Pl.'s Am. Compl. ¶ 41.  Plaintiff has also alleged that the defamatory statement was made "willfully and with malice, for purposes of damaging him in his business and reputation."  Pl.'s Am. Compl. ¶ 42.  Accordingly, the magistrate judge finds that plaintiff has adequately pled a claim for libel under Virginia law.

12

## Conclusion

The magistrate judge recommends that Counts I and II of the amended complaint be dismissed in their entirety as plaintiff has failed to properly plead either of the claims sought to be presented there.  The magistrate judge further recommends that judgment for liability be entered for plaintiff on Count V of the amended complaint, and that the matter be set for a hearing on the character and amount of plaintiff's damages for defamation.

## Notice

By means of the court's electronic filing system, and by mailing a copy of this report and recommendation to defendant's address used for service of process, the parties are notified as follows.  Objections to this report and recommendation must be filed within ten (10) days of service on you of this report and recommendation.  A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.


_____/s/_____

Thomas Rawles Jones, Jr.
United States Magistrate Judge


May 4, 2009
Alexandria, Virginia