FILED

SEP 3 0 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| BERNARD J. CARL | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv1128 |
| | ) | |
| BERNARDJCARL.COM, et al., | ) | |
|     Defendants. | ) | |

### ORDER

The matter is before the Court to consider plaintiff's Motion for Default Judgment, U.S. Magistrate Judge Jones's Amended Report and Recommendation, and plaintiff's objections to that report.

### I. Facts[1]

Plaintiff Bernard J. Carl, a trained lawyer, resides in Washington, D.C., where he works as an investor and businessman. Although he commenced this action by retained counsel, he is now proceeding *pro per*.

The Amended Complaint names three defendants, two identified defendants and the domain name "bernardjcarl.com."[2] The two identified defendants are Fabrice Marchisio, a citizen of France and a partner in the second named defendant, the French law firm of Cotty

---

[1] The following facts are derived from the Amended Complaint, plaintiff's declarations, and representations made by plaintiff at the Friday, September 18, 2009 hearing.

[2] The original Complaint proceeded *in rem* against the domain name, bernardjcarl.com, NS Holding, Inc. (formerly known as Network Solutions, Inc.), and two unidentified John Does. These unidentified defendants were later replaced by Marchisio and CVM&L in the Amended Complaint.

Vivant Marchisio & Lauzeral ("CVM&L").

In 1996, plaintiff founded Brazos Europe, Inc. ("Brazos"), a private equity firm in which he was one of two principals. More recently, Brazos, in 2005, sought to acquire D. Porthault, a prestigious small luxury brand in France. To facilitate this transaction, Brazos retained the French law firm of Darrois Villey & Maillot ("Darrois"). In June 2005, Darrois subcontracted certain tasks associated with the acquisition to defendants Marchisio and CVM&L, all without plaintiff's knowledge. Marchisio and CVM&L claim that they are owed money by Brazos or plaintiff for work done in connection with the acquisition of D. Porthault. Yet, plaintiff contends that Marchisio and CVM&L's work in this regard was defective, threatening to increase the cost of acquisition by $300,000. In these circumstances, Darrois, Brazos, and plaintiff refused to pay defendants for their services. Defendants subsequently sued plaintiff in French court to recover the disputed fee in February 2007. This suit failed and was dismissed.[3]

Following dismissal of the French suit, Marchisio, in February 2007, acting on behalf of CVM&L, registered the domain name "bernardjcarl.com" with Network Solutions, LLC, whose servers are located in Virginia. Although the registrant listed was "Benjamin Franklin," plaintiff was able to trace the credit card associated with the domain name registration to Marchisio.[4] Defendants posted the following statement at the domain name:

> Message to the attention of Brazos Europe Inc. and managing partners Mr
> Bernard J. Carl and Mrs Shannon Fairbanks

---

[3] This record does not disclose the grounds for the dismissal of defendants' French suit.

[4] In the Amended Complaint, plaintiff alleges that Marchisio acted "within the scope of his authority as a partner of CVM&L in committing tortious acts in this District." Where, as here, defendants are in default, plaintiff's well-pleaded allegations of fact must be taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

> Dear Mr Carl,
> Dear Mrs Fairbanks,
> We are very sorry to contact you in such a direct and unconventional way but we would be very grateful if you could have the elegance to pay the counsels who allowed you to safely acquire the company D. Porthault, which owns one of France's most prestigious luxury brands, in June 2005.
> We have worked very long hours during several months, never spared our efforts and diligently did all you required to assist you in this successful transaction.
> You never complained about the quality of our input but surprisingly "disappeared" when invoice payment was due.
> We have tried to contact you many times since then....but silence was the only answer.
> Have you forgotten our phone numbers?
> It being the case, please do not worry, use the email hereunder and be sure we will be in touch soon!
> In the meantime, feel free to meditate Benjamin Franklin:
> *"Creditors have better memories than debtors"*
> Benjamin Franklin, Poor Richard's Almanac (1758)
> US author, diplomat, inventor, physicist, politician, & printer (1706-1790)
> <u>email us</u>

(Ellipses in original.)

Plaintiff alleges that this statement is false and defamatory.  Specifically, he maintains that he did not personally retain defendants and therefore is not liable for defendants' outstanding fee claim.  According to plaintiff's declarations, defendants' online publication of this statement caused several of Brazos's potential investors to raise questions about the posted material.[5]

---

[5] Plaintiff's declarations further establish that Brazos raised over $40 million from investors between 2001 and 2006, and returned a profit to these investors of more than $120 million in 2007 alone.  During its 2007 fundraising campaign, Brazos received questions from potential investors regarding defendants' online statement.  After several months of discussion with these potential investors, Brazos suspended this fundraising effort and Brazos was ultimately "closed down" at the beginning of 2008.  Although plaintiff appears to imply in argument that defendants caused the failure of the 2007 fundraising effort—and perhaps even Brazos's closure—no such implication is warranted on this record.  More specifically, this record leaves unclear whether the potential investors from whom Brazos attempted to raise funds were the same investors who queried Brazos about the webpage.  Likewise, the record does not specifically reflect whether any potential investor's decision not to contribute funds to Brazos in

## II. Procedural History

Plaintiff, by retained counsel, filed his original Complaint on November 6, 2007.

Although the action initially proceeded *in rem* against the domain name and named two John

Does, the record reflects that plaintiff was ultimately able to identify defendants as the domain

name registrants and thus to file an Amended Complaint eliminating the John Does and naming

the defendants, who were then served with process in France pursuant to the Hague Convention

on April 2, 2008. Accordingly, the Amended Complaint proceeds not *in rem*, but *in personam*

against defendants Marchisio and CVM&L.[6] *See* 15 U.S.C. § 1125(d)(2)(A)(ii) (allowing suit *in*

*rem* only where the owner of a mark cannot obtain *in personam* jurisdiction over a person who

would have been a defendant in a civil action for cyberpiracy); *Cont'l Airlines, Inc. v.*

*Continentalairlines.com*, 930 F. Supp. 2d 501, 506-07 (E.D. Va. 2005) (same).

The Amended Complaint is in five Counts: (I) Unfair Competition, False Representation

and Designation of Origin; (II) Trademark, Trade Name Infringement, Unfair Competition and

Misappropriation; (III) Anti-Cybersquatting Consumer Protection Act; (IV) Cyberpiracy; and (V)

Libel.

Following defendants' failure to appear or to file any responsive pleadings to the

Amended Complaint, plaintiff moved for default judgment on April 28, 2008, at which time the

---

2007 was caused by, or attributable to, defendants' publication of the statement.

[6] Because Network Solutions, LLC has disabled the domain name, equitable relief *in rem* against the domain name is no longer appropriate. *See* 15 U.S.C. § 1125(d)(2)(A)(ii); *Alitalia-Linee Aeree Italiane S.p.A. v. casinoalitalia.com*, 128 F. Supp. 2d 340, 344-45 (E.D. Va. 2001) ("[T]he ACPA provides . . . two mutually exclusive avenues for relief against putative infringers[:] . . . either *in personam* against an infringer or, in certain circumstances where this cannot be done, the owner may proceed *in rem* against the domain name; a mark owner may not proceed against both at the same time.").

matter was referred to a U.S. Magistrate Judge for a report and recommendation pursuant to 28

U.S.C. § 636. Following a hearing conducted on May 2, 2008, the Magistrate Judge ordered

supplemental briefing on the issue of personal jurisdiction. A Report and Recommendation

issued on October 29, 2008, with objections due by November 13, 2008. Specifically, the

Magistrate Judge reported that personal jurisdiction was lacking in Virginia on Counts I, II, and

V, and recommended that these Counts be dismissed or transferred to the District of Columbia.

Moreover, the Magistrate Judge concluded that Counts III and IV did not face the same

jurisdictional bar because, in his opinion, they proceeded *in rem*; the Magistrate Judge

recommended dismissal of these Counts on the merits.[7] An Order issued on December 16, 2008,

adopting the recommendation that Counts III and IV be dismissed because plaintiff had not

---

[7] This finding of jurisdiction requires clarification. The Magistrate Judge analyzed Count III under 15 U.S.C. § 1117(a) and dismissed the claim as moot because plaintiff no longer sought transfer of the domain name. This Count is more properly viewed as an action under 15 U.S.C. § 1125(d)(2), which allows a plaintiff alleging cyberpiracy to proceed *in rem* and request the transfer of a domain name. Importantly, an *in rem* action is only appropriate where defendants who typically would be named in a civil action for cyberpiracy are not subject to personal jurisdiction. *See Cont'l Airlines, Inc. v. Continentalairlines.com*, 390 F. Supp. 2d 501, 506-07 (E.D. Va. 2005). Because the Magistrate Judge in his initial Report and Recommendation determined that personal jurisdiction over defendants was lacking, plaintiff's request for injunctive relief *in rem* against the domain name in Count III was proper. Yet, Count III is considered here on the merits because there is personal jurisdiction over defendants in Virginia for plaintiff's damages claim pursuant to 15 U.S.C. §§ 1117(d), 1125(d)(1).

By contrast, Count IV should not have been viewed as an *in rem* action. Specifically, the Magistrate Judge found that 15 U.S.C. § 1125(d) provided a basis for proceeding *in rem* for a violation of cyberpiracy under 15 U.S.C. § 1129. Section 1129, however, creates civil liability for "[a]ny *person* who registers a domain name that consists of the name of another living person" under certain circumstances. *Id.* § 1129(a) (emphasis added). Such an action must proceed *in personam*, rendering *in rem* jurisdiction under § 1125(d)(2) inapposite. Nevertheless, because the Magistrate Judge ultimately found personal jurisdiction to be proper in his Amended Report and Recommendation, Count IV is analyzed here on the merits.

objected to the substance of the report as to those claims within the stated 10-day period;[8] the
Order further remanded the remaining Counts and directed the Magistrate Judge to reconsider the
issue of personal jurisdiction. *Carl v. BernardJCarl.com*, 1:07cv1128 (E.D. Va. Dec. 16, 2008)
(Order).

On May 4, 2009, the Magistrate Judge issued an Amended Report and Recommendation
as to personal jurisdiction and the merits of Counts I, II, and V. Specifically, the Magistrate
Judge, having found personal jurisdiction over defendants upon reconsideration of the issue,
recommended dismissal of Counts I and II, but recommended entry of judgment for plaintiff on
Count V. Notably, Counts III and IV were not discussed in the Amended Report and
Recommendation, as these Counts had been previously dismissed by the December 16, 2008
Order. *See id.* When plaintiff failed to file timely objections, an appropriate Order issued on
May 22, 2009, adopting the Magistrate Judge's recommendations and setting a hearing for May
29, 2009, to determine the extent of plaintiff's libel damages under Count V. *Carl v.
BernardJCarl.com*, 1:07cv1128 (E.D. Va. May 22, 2009) (Order). At the hearing, plaintiff, now
proceeding *pro per*, represented that he had not received the Amended Report and
Recommendation because it had been sent to his former counsel. Consequently, the May 22,
2009 Order was vacated, and plaintiff was afforded additional time to file objections to the
Amended Report and Recommendation by 5:00 p.m., Friday, June 12, 2009, with a hearing set
for July 10, 2009. *Carl v. BernardJCarl.com*, 1:07cv1128 (E.D. Va. May 29, 2009) (Order).

---

[8] Plaintiff did timely object to the finding that personal jurisdiction was lacking. With
respect to Counts III and IV, plaintiff argues that his passing reference to 15 U.S.C. § 1117, a
provision authorizing the award of damages in certain cyberpiracy suits, in his concluding
paragraph served as an objection. This sentence, however, is not an objection on the merits; it is
simply a request for relief.

As no objections were filed by the June deadline, an Order issued on July 10, 2009, again dismissing Counts I and II and entering judgment in favor of plaintiff on Count V. *Carl v. BernardJCarl.com*, 1:07cv1128 (E.D. Va. July 10, 2009) (Order). Subsequently, however, it was determined that plaintiff had in fact filed timely objections prior to June 12, 2009, but that neither the Magistrate Judge nor the Clerk's Office could locate them. Accordingly, an Order dated July 20, 2009, vacated the July 10, 2009 Order and directed plaintiff to refile his objections. *Carl v. BernardJCarl.com*, 1:07cv1128 (E.D. Va. July 20, 2009) (Order). Following receipt of plaintiff's objections, a September 11, 2009 hearing was set to resolve them. On September 4, 2009, plaintiff filed a request for continuance due to necessary attendance at "a scheduled shareholders meeting in New York." A continuance to September 18, 2009, was granted as a matter of grace, despite the absence of good cause or sufficient justification. *Carl v. BernardJCarl.com*, 1:07cv1128 (E.D. Va. Sept. 8, 2009) (Order).

In the course of the September 18, 2009 hearing, plaintiff, *pro per*, presented his arguments with respect to his objections to the Amended Report and Recommendation and with respect to his claim for compensatory and punitive damages. Additionally, during the course of the hearing, plaintiff knowingly and voluntarily waived his right to a jury trial as to his libel claim. Following the hearing, the matter was taken under advisement and is now ripe for disposition.

### III. Disposition of Claims

*A. Count I: Unfair Competition, False Representation and Designation of Origin.*

Plaintiff's claim for false representation arises under the Lanham Act. 15 U.S.C. § 1051 *et seq.* More specifically, § 43(a) of the Act, now codified at 15 U.S.C. § 1125, states:

(a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In this circuit, a plaintiff must satisfy five elements in order to prevail on a claim for trademark infringement and unfair competition: (1) that plaintiff possesses the mark, and that the defendant (2) uses the mark; (3) in commerce; (4) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the use of the mark be likely to confuse consumers. *See People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (quoting 15 U.S.C. §§ 1144, 1125).

The Magistrate Judge's Amended Report and Recommendation concluded that while the Amended Complaint satisfies elements (2), (3), and (4), plaintiff fails to demonstrate that (1) he possessed a protectible mark or (5) that defendants' use of the mark was likely to cause confusion. Accordingly, the Magistrate Judge recommended dismissal of this claim.[9]

*1. Plaintiff Did Not Possess a Protectible Mark*

---

[9] In addition to objecting to the Magistrate Judge's legal conclusions, plaintiff argues that the Magistrate Judge improperly acted as a finder of fact in pointing out defects in the Amended Complaint, such as the absence of facts establishing the mark's secondary meaning. Plaintiff's argument fails; the Magistrate Judge recognized pleading deficiencies, but did not, as plaintiff argues, find facts.

As to plaintiff's possession of a protectible mark, it is clear that plaintiff does not meet the requisite legal standard. Where, as here, plaintiff has not registered the mark with the U.S. Patent and Trademark Office, a party seeking protection under the Lanham Act must demonstrate the mark's distinctiveness. The level of protection afforded depends on whether the mark is categorized as fanciful, arbitrary, suggestive, descriptive, or generic.

Controlling circuit authority clearly classifies the use of first names or surnames as descriptive marks, which are inherently non-distinctive and accordingly are not protected under the Lanham Act absent a showing of distinctiveness. Thus, descriptive marks may gain the protection of the Lanham Act if they become distinctive by acquiring a secondary meaning within the relevant purchasing community—that is, a substantial number of present and prospective consumers. *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990). In this circuit, six factors are relevant to, but not dispositive of, the secondary meaning inquiry: (1) advertising expenditures; (2) consumer studies linking the mark to the source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use. *Id.* Notably, a defendant bears the burden of demonstrating a mark's secondary meaning under strict evidentiary requirements, a rule particularly apposite when applied to professions that traditionally use personal names as marks. In those circumstances, indiscriminately protecting descriptive, non-distinctive marks without requiring a sufficient showing of secondary meaning would likely hinder the creation of new entities or force individuals in those professions to change their marks frequently. *See* 2 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 13:2 (4th ed. 1998).

*Dawson v. Brandsberg*, 2006 U.S. Dist. LEXIS 73512 (W.D. Va. Oct. 10, 2006),

provides an instructive contrast to this case.  There, a district court considering a motion to dismiss found that it could not resolve on the pleadings whether the name "Robert E. Dawson" might possess a secondary meaning in the relevant community.  More specifically, the court relied on exhibits in the record showing that plaintiffs had established a real estate company named "Robert E. Dawson & Co." more than a decade prior to defendants' registration of the domain name "www.robertedawson.com." *Id.* at *4-*6.  It further cited the fact that the mark "Robert E. Dawson" had appeared on business cards, letterhead, and announcements over a substantial period of time, and that Dawson had extensively advertised his real estate service using the mark. *Id.* at *5-*6.

*Brandsberg* stands in stark contrast to the facts of this case, which establish only that plaintiff was a principal of Brazos.  Aside from naked assertion in his pleadings of an interest in "protecting his good name and reputation," nothing in the record demonstrates that plaintiff's name has gained "the power . . . to symbolize a particular business." *Perini Corp.*, 915 F.2d at 125 (citation and quotation marks omitted).  Plaintiff does not suggest that he has advertised private equity services under his own name, nor does the evidence suggest that plaintiff has successfully operated under the mark in the past.  Significantly, there is no indication that the names "Bernard J. Carl" and "Brazos" are essentially synonymous.  The mark serves merely to identify plaintiff as a person—and at most a principal in Brazos—and not a business or service itself.  Accordingly, the six factor test, applied here, points persuasively to the conclusion that, on this record, there is no evidence that the mark "Bernard J. Carl" has acquired a secondary meaning within the relevant community.

   *2. Defendants' Use of the Mark is Unlikely to Confuse Consumers*

Plaintiff's objections likewise miss the mark with respect to the likelihood of confusion analysis. The Fourth Circuit in *Perini Corp.* enumerated eight factors to consider in assessing the likelihood of confusion:

> (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's intent in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

915 F.2d at 127.

Under these factors, plaintiff cannot demonstrate that defendants' website would be likely to confuse consumers. First, courts generally categorize a personal name used as a mark as "strong" only when it has acquired a secondary meaning. *See Worsham Sprinkler Co. v. Wes Worsham Fire Prot., LLC*, 419 F. Supp. 2d 861, 875 (E.D. Va. 2006) (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992)); *see also* 2 *McCarthy on Patents* § 13:2 ("Once secondary meaning is established in a personal name, the name may become strong and well-known, and entitled to a broad scope of protection."). Here, plaintiff's mark has acquired no secondary meaning and therefore is not a strong mark. Moreover, because defendants offer no product on the website, there can be no confusion regarding a product's identity. In that regard, plaintiff's analogy to an unfair competition case—specifically that defendants' website lures customers in through the domain name and then attempts to "sell" them a libelous story—is inapposite. Moreover, contrary to plaintiff's written assertion that the Fourth Circuit has never rejected the so-called "initial interest confusion" theory, the court in *Lamparello* expressly declined to do so. *See Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005) ("[W]e have never adopted the initial interest confusion theory; rather, we have followed a

very different mode of analysis . . . . [W]e did not abandon this approach in *PETA*."). In the course of the September 18, 2009 hearing, plaintiff admitted that *Lamparello* controls here.

Accordingly, because plaintiff can show neither possession of a protectible mark, nor that consumers would likely be confused by defendants' use of the mark, Count I must be dismissed.

B. *Count II: Trademark, Trade Name Infringement, Unfair Competition and Misappropriation.*

Count II, arising under state common law instead of the Lanham Act, essentially mirrors Count I. Indeed, the analysis of the federal and state claims is identical as to certain factors. *See Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved."). In this case, while plaintiff may possess a protectible mark under common law first-usage principles, it is clear, as discussed above, that defendants' use of the mark was not likely to cause confusion among consumers. Further, plaintiff's claim for misappropriation is not recognized under Virginia law. *See Superperformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F. Supp. 2d 587, 597 (E.D. Va. 2002) ("Superformance cites no Virginia or Massachusetts case for its misappropriation claim and it appears neither state has recognized such a cause of action."). Accordingly, dismissal of Count II is appropriate.

C. *Count III: Anti-Cybersquatting Consumer Protection Act.*

As an initial matter, Count III was dismissed by Order dated December 16, 2008. Yet, even if plaintiff's claim is considered on the merits, the Magistrate Judge's determination that the

Count should be dismissed remains correct, albeit for other reasons stated below.[10]

At the September 18, 2009 hearing, plaintiff contended that even though his request for injunctive relief was moot because Network Solutions, LLC had disabled the domain name and website, he was nevertheless entitled to damages under 15 U.S.C. § 1117(d). While it is true that the disabling of the domain name and website eliminates the claim for only injunctive relief, but not the damages claim, § 1117(d) requires a violation of § 1125(d)(1) as a predicate for an award of damages. That provision states, as follows:

> (1) (A) A person shall be liable in a civil action by the owner of mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>     (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>     (ii) registers, traffics in, or users a domain name that—
>         (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

Importantly, personal names are not *per se* protected as a matter of course; rather, to gain the protection of the statute, a personal name used as a registered domain name must have acquired a secondary meaning at the time of registration. *See id.* §1125(d)(1)(A)(ii)(I); *see also 3700 Assocs., LLC v. Griffin*, 2008 U.S. Dist. LEXIS 79721, at *20 (S.D. Fla. Oct. 6, 2008) ("To prevail on an ACPA claim, the Act plainly requires that the plaintiff's mark is 'distinctive' or 'famous' at the time of registration of the domain name."); *N. Lights Tech., Inc. v. N. Lights Club*, 97 F. Supp. 2d 96, (D. Mass. 2000) (requiring, as a prerequisite, that plaintiff own the mark). As discussed above with respect to Count I, plaintiff has not formally registered the mark

---

[10] To be clear, the Magistrate Judge's initial Report and Recommendation concluded that plaintiff's request for injunctive relief was moot. Because the Magistrate Judge found further that personal jurisdiction was lacking, the report did not address plaintiff's request for damages in an *in personam* suit under 15 U.S.C. § 1117(d).

with the U.S. Patent and Trademark Office, and there is no indication that his name has acquired a secondary meaning in the community such that it would be deemed "distinctive" at the time defendants registered the domain name. Accordingly, plaintiff is not entitled to recover damages under 15 U.S.C. § 1117(d) because defendants have not violated § 1125(d)(1).

D. *Count IV: Cyberpiracy.*

Like Count III, this Count was dismissed by Order dated December 16, 2008, and warrants dismissal even when considered on the merits. To state a claim for violation of anti-cyberpiracy provisions, plaintiff must demonstrate defendants' "specific intent to profit from such name *by selling the domain name for financial gain to that person or any third party.*" 15 U.S.C. § 1129(a) (emphasis added).

In this case, plaintiff argues that the Magistrate Judge's recommendation of dismissal on grounds of defective pleading was improper because defendants were adequately informed of the allegation of extortion by cyberpiracy. Yet, even if that were the case, plaintiff's pleadings, taken as true, fail to satisfy the statute. Paragraph 37 of the Amended Complaint states that defendants "specifically intend[ed] to profit from registering this Domain Name by extorting Plaintiff into paying [defendants] monies that are not owed by Plaintiff." This statement is supplemented by paragraph 15, which attributes to defendants the motive of "compel[ling] Plaintiff to contact them and pay them for the purported debt in exchange for the *removal* of the website." (Emphasis added.) Taken together, these paragraphs lead to the conclusion that defendants intended only that plaintiff pay them money to settle an alleged debt; the statements do not, as plaintiff argues, demonstrate that defendants intended to profit by selling the website and domain name to plaintiff, as the statute requires. Because the facts pleaded and assumed to be true fail to

-14-

satisfy the elements found in 15 U.S.C. § 1129(a) as a matter of law, Count IV must be dismissed.

### E. Count V: Libel.

Plaintiff does not object to the Magistrate Judge's recommendation that judgment be entered in plaintiff's favor on this Count. Importantly, plaintiff waived his right to a jury trial on the issue of damages as to libel at the September 18, 2009 hearing.

### 1. Plaintiff Is Entitled to a Judgment for Libel

In an action for defamation, Virginia law requires (1) publication of (2) an actionable statement and (3) proof of the requisite intent. *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). Actionable statements are those that are false and defamatory. *Id.* at 206-07. Notably, to recover compensatory damages, plaintiff bears the burden of proving the statement's falsity. As the Supreme Court of Virginia has explained,

> We hold, therefore, that in an action brought by a private individual to recover actual, compensatory damages for a defamatory publication, the plaintiff may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based. Under this standard, truth no longer is an affirmative defense to be established by the defendant. Instead, the plaintiff must prove falsity, because he is required to establish negligence with respect to such falsity. In addition, we hold that such liability may be based upon negligence, whether or not the publication in question relates to a matter of public or general concern.

*Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724-25 (Va. 1985).

In this case, the allegedly defamatory statement was undeniably published; it was available over the World Wide Web. Facts presented in plaintiff's declarations further demonstrate that defendants' statement is both false and defamatory. As to falsity, it is clear that

defendants participated in a transaction involving Brazos.  Yet, neither plaintiff nor Brazos retained defendants directly; rather, it was Brazos's counsel, Darrois, that subcontracted certain work to defendants.  Accordingly, defendants knew or should have know that Darrois, not plaintiff, would be the entity liable, if at all, for any unpaid fee for services rendered by defendants.  Defendants' statement regarding plaintiff's refusal to pay an outstanding debt is therefore false.

     False statements are not actionable unless they are also defamatory.  Some statements are defamatory *per se* and do not require proof of special damages.  Under Virginia law, there are four categories of words that are actionable *per se*: (1) commission of a crime involving moral turpitude; (2) contraction of a contagious disease that would ostracize the plaintiff; (3) unfitness to perform the duties of an office or employment of profit, or want of integrity; and (4) those which prejudice a person in his profession or trade.  *See Fleming v. W. Bedford Moore, III*, 275 S.E.2d 632, 635 (Va. 1981).  Significantly, not all false statements in these four categories are actionable.  For words that prejudice a person in his profession or trade, there must be a nexus between the defamatory statements and the person's occupation.  As the Supreme Court of Virginia has noted, "[t]he allegation that a person has refused to pay a money debt is not *per se* defamatory if that person is not engaged in a vocation in which credit is necessary for the proper and effectual conduct of his business."  *Id.* at 636 (citing *M. Rosenberg & Sons v. Craft*, 29 S.E.2d 375, 378 (Va. 1944), *overruled on other grounds by Gazette*, 325 S.E.2d 713); *see also Weaver v. Beneficial Fin. Co.*, 106 S.E.2d 620 (Va. 1959) (reviewing case law and finding words regarding unpaid debt not libelous *per se* because they did not relate to plaintiff's performance as a mechanic); 50 Am. Jur. 2d *Libel and Slander* § 217 (1995) ("It is not libel per se to publish of

-16-

one that he owes a debt that is long past due where that charge does not affect the person in his business, vocation, or profession.").

Here, there is no doubt that a nexus exists between the defamatory statement and plaintiff's occupation. Defendants' statement—which clearly indicates plaintiff's unwillingness to pay outstanding debts—might well affect plaintiff in the execution of his duties as a principal in Brazos. Indeed, defendants' false statement refers to a debt plaintiff allegedly accrued in the regular course of his professional work, namely investing in, acquiring, and developing companies through a private equity firm. Given that the private equity industry centers on the raising and stewardship of large sums of money, it is plausible to conclude that an attack on a person's integrity in discharging debts may be damaging to his practice of this profession.

In sum, as the Magistrate Judge correctly concluded, this record affords ample basis for the conclusion that defendants' statement was false and defamatory.

### 2. Libel Damages

Where, as here, a private individual brings suit for publication of words considered defamatory *per se* and the words do not involve a matter of public concern, compensatory damages are presumed. *Tronfield v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006) ("A person maligned by defamation *per se* may recover compensatory damages for injury to reputation, humiliation, and embarrassment without demonstrating any financial loss.") (citing *Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 852-53 (Va. 1985)). Punitive damages are likewise available in defamation actions provided actual malice is shown by clear and convincing evidence. *See Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063,1071 (4th Cir. 1993). Actual malice is defined under Virginia law as making a statement

with "knowledge that it was false or with reckless disregard of whether it was false or not." *Newspaper Publ'g Corp. v. Burke*, 224 S.E.2d 132, 136 (Va. 1976). This definition is distinguished from the more common meaning of malice, *i.e.*, ill will or spite. *See Great Coastal*, 334 S.E.2d at 851 n.3 (differentiating between common-law malice and "actual malice"). Importantly, Virginia law extends courts awarding damages for defamation wide latitude in determining the amount of the award. *See Gazette*, 325 S.E.2d at 740 ("There is no fixed standard for measuring compensatory damages, and the amount of the award is largely a matter of discretion . . . .").

With respect to compensatory damages, plaintiff argues that his financial loss and the damage to his reputation are comparable to the harm a party suffers at the hands of a cyberpirate who violates the Anti-Cybersquatting Consumer Protection Act. Citing 15 U.S.C. § 1117(d), plaintiff suggests that he should similarly be awarded at least $100,000 in compensatory damages.[11] Yet, the two types of harms are dissimilar; libel causes reputational harm to the person, while cybersquatting causes harm to the mark. Accordingly, damages are not determined here on this ground. Furthermore, while plaintiff correctly contends that under Virginia law, a party entitled to a judgment for defamation *per se* need not prove the quantum of damages suffered, the paucity of facts in this record pertaining to the quantum of any actual damages

---

[11] Plaintiff misunderstands the statute in making his argument. The statute authorizes an award of damages that does not exceed $100,000. *See* 15 U.S.C. § 1117(d) ("[T]he plaintiff may elect . . . to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.").

-18-

suffered complicates the damages determination.[12]  Plaintiff apparently requests that an inference is warranted from the fact that potential investors raised questions about defendants' webpage.[13]  Specifically, plaintiff attempts to suggest that defendants' actions caused potential investors to equivocate, ultimately leading to Brazos's closure when fundraising efforts failed.[14]  Yet, to request that inference is to seek more than the meager facts presented warrant.  Indeed, it is hardly plausible given the myriad of economic and other factors that might have contributed to these events; nor has plaintiff presented any evidence on this point.  Ultimately, the facts in the record prove only that defendants' false and defamatory statement prompted potential investors of Brazos to raise questions about plaintiff's purported debt.

Next, regarding plaintiff's request for punitive damages, no facts in the record prove actual malice by clear and convincing evidence.  In his pleadings and declarations, plaintiff repeatedly avers that defendants "apparently decided to 'get even'" or acted "willfully and with malice" in registering the domain name and publishing the defamatory statement.  Yet, these statements confuse the common-law meaning of "malice"—namely, "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will or desire to injure the plaintiff"—with the meaning given to it in *Great Coastal Express* regarding knowledge or reckless disregard of the truth.  *See* 334 S.E.2d at 851 n.3.  To be sure, plaintiff's declarations contend that the French suit

---

[12] Notably, plaintiff elected not to present specific proof of the amount of damages he suffered at the September 18, 2009 hearing, even though he was invited to do so by Order.  *See Carl v. BernardJCarl.com*, 1:07cv1128 (E.D. Va. Sept. 8, 2009) (Order).

[13] Plaintiff's request for this inference is not explicitly made as plaintiff elected not to present any specific proof of damages.

[14] *See supra* note 5.

failed, but they do not state the reason for dismissal. If the French claim was denied because the French court held plaintiff was not legally liable for the alleged debt, such a finding would clearly show defendants' actual knowledge of the statement's falsity, and would unquestionably satisfy the "actual malice" standard. Plaintiff, however, offers no such facts. In the absence of clear and convincing evidence of malice, plaintiff is not entitled to punitive damages.

Finally, under Virginia law, a court "does not have inherent authority to impose as a sanction an award of attorney's fees and costs." *McNally v. Rey*, 659 S.E.2d 279, 282 (Va. 2008) (citing *Nusbaum v. Berlin*, 641 S.E.2d 494, 502 (Va. 2007)). Such authority must be specifically granted by statute. *See id.*; 50 Am. Jur. 2d *Libel and Slander* § 389 (1995) ("Generally, expenses and attorneys' fees are not recoverable in the absence of statute."). Here, plaintiff points to no authority that permits a court to award costs and attorney's fees to a party prevailing in a defamation suit.

Accordingly, plaintiff will be awarded compensatory damages in an amount to be stated in a forthcoming Judgment Order as to Count V of the Amended Complaint. Plaintiff's request for punitive damages is denied as a matter of law, and plaintiff's request for costs and attorney's fees is deferred pending further briefing by plaintiff.

## IV. Conclusion

Accordingly, for these reasons, and for good cause,

It is hereby **ORDERED** that the Court **ADOPTS** as its own the May 4, 2009 Amended Report and Recommendation of the Magistrate Judge to the extent it is consistent with this Order.

Accordingly, it is further **ORDERED** that Counts I to IV of the Amended Complaint are

Case 1:07-cv-01128-TSE-TRJ   Document 31   Filed 09/30/09   Page 21 of 21 PageID# 346

**DISMISSED**. Plaintiff will be awarded judgment as to Count V in an amount to be stated in a forthcoming Judgment Order entered pursuant to Rule 58(a), Fed. R. Civ. P., once the issue of legal fees is resolved.

It is further **ORDERED** that plaintiff file a memorandum stating the legal basis on which a court may award attorney's fees to a prevailing party on a defamation claim by 5:00 p.m., Wednesday, October 7, 2009.[15]

The Clerk is directed to send a copy of this Order to the Magistrate Judge and the *pro per* plaintiff.

Alexandria, Virginia
September 30, 2009

T. S. Ellis, III
United States District Judge

---

[15] It is worth noting that some of plaintiff's claimed attorney's fees were generated prior to the commencement of this lawsuit, including the creation of cease and desist letters. Plaintiff has not yet provided any legal basis for concluding that these pre-litigation fees may be awarded.